William Raymond MAYES, Petitioner,

v.

The STATE of Oklahoma, Respondent.

No. PC–95–1218.

Court of Criminal Appeals of Oklahoma.

July 10, 1996.

Mark Hendricksen, Lanita Hendricksen, El Reno, C.S. Thornton, Oklahoma City, for Petitioner.

W.A. Drew Edmondson, Attorney General of Oklahoma, Sandra D. Howard, Assistant Attorney General, Chief, Criminal Appeals, Oklahoma City, for Respondent.

LUMPKIN, Judge.

Petitioner William Raymond Mayes appeals to this Court from the denial of post-conviction relief by the District Court of Jefferson County, Case No. CRF–89–77. At the conclusion of a jury trial, Petitioner was convicted of Murder in the First Degree (21 O.S.Supp.1982, § 701.7) and Conspiracy to Commit Murder (21 O.S.1981, § 421). After finding the presence of one aggravating circumstance—that the murder was especially heinous, atrocious or cruel—the jury recommended punishment of death for murder and ten (10) years and a $5,000 fine for conspiracy. This Court affirmed the convictions on direct appeal, and certiorari was denied by the Supreme Court of the United States. *Mayes v. State,* 887 P.2d 1288 (Okl.Cr.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1260, 131 L.Ed.2d 140 (1995).

## I.

Petitioner raised the following propositions of error in his application to the trial court: (1) ineffective trial counsel (failure to present mitigating evidence); (2) ineffective appellate counsel (failure to present cumulative error argument); (3) cumulative error; (4) this Court improperly weighed evidence presented at the trial; (5) the death penalty statute is unconstitutional; (6) error in instruction (failure to define to the jury what "life without parole" meant). In the application, he also requested an evidentiary hearing to prove the claims.

The trial court denied relief in an order dated August 25, 1995, and filed August 28, 1995.[1] No evidentiary hearing was held. Petitioner appeals that denial to this Court, setting forth the following propositions: (1) ineffective trial counsel (failure to present mitigating evidence); (2) ineffective appellate counsel (failure to present cumulative error argument); (3) cumulative error ((a) improper questioning of the jury by the trial court concerning ability to impose the death penalty; (b) admission of inadmissible, irrelevant and prejudicial evidence in the form of a civil settlement; (c) improper evidence of prior bad acts and Petitioner's propensity for violence; (d) improper evidence of polygraph examination; (e) error by the trial court in precluding defense counsel from asking questions concerning bias; (f) inadmissible hearsay statements; (g) error in denying proper cross-examination of key witness); (4) this Court improperly weighed evidence presented at the trial; (5) the death penalty statute is unconstitutional; (6) error in instruction (failure to define to the jury what "life without parole" meant); (7) error by the district court in denying post-conviction relief.

## II.

■ The post-conviction procedure is not intended to be a second direct appeal. *Fox*

*v. State*, 880 P.2d 383, 384 (Okl.Cr.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1318, 131 L.Ed.2d 199 (1995). This Court does not consider an issue which was raised on direct appeal (and is therefore *res judicata*) or an issue which could have been raised on direct appeal but which was not (and is therefore waived). *Thomas v. State*, 888 P.2d 522, 525 (Okl.Cr.1994), *cert. denied*, —— U.S. ——, 116 S.Ct. 123, 133 L.Ed.2d 73 (1995); *Castro v. State*, 814 P.2d 158, 159 (Okl.Cr.1991), *cert. denied*, 502 U.S. 1063, 112 S.Ct. 947, 117 L.Ed.2d 116 (1992).

## III.

In his first proposition of error, Petitioner claims he received ineffective assistance of counsel at the trial level. He bases this on affidavits presented to this Court on direct appeal from various friends and family members who claimed they would have presented mitigating evidence showing Petitioner did not deserve the death penalty. He also presented to the district court in his post-conviction application an affidavit from a psychologist.

■ We addressed this issue on direct appeal. *Mayes*, 887 P.2d at 1314–16. Consequently, it is *res judicata*, and we shall not consider it again. *Berget v. State*, 907 P.2d 1078, 1081 (Okl.Cr.1995).

■ That does not dispose of the affidavit from the psychologist. The record reflects that the psychologist, Michael M. Gelbort, PhD., did not interview Petitioner until March 1995, after Petitioner's direct appeal was handed down. There is no evidence in the direct appeal record that Petitioner had any kind of a mental deficiency. Accordingly, this claim is properly before this Court on post conviction. *See* 22 O.S.1991,[2] § 1080(d);

1. We also note the following pertinent dates: On October 3, 1995, Petitioner's attorneys filed an application for an appeal out of time. The trial court recommended the application be granted on the same date, and this Court issued an Order granting an appeal out of time on November 3, 1995. The Petition in Error, Notice of Intent to Appeal and Designation of Record were filed with the Clerk of this Court on November 6, 1995. The original record was filed November 28, 1995. Petitioner's brief was filed without extension requests on December 20, 1995. Respondent's brief was filed without extension request on January 4, 1996. No reply brief was filed by Petitioner.

2. A completely redesigned post-conviction procedure for capital cases has gone into effect since Petitioner's case was filed. *See* 22 O.S.Supp. 1995, §§ 1088.1, 1089; 22 O.S.Supp.1996, Ch.

*Berget,* 907 P.2d at 1085. We find no merit to the claim, however.

■ Our analysis of a claim of ineffective trial counsel begins with the presumption trial counsel was competent; therefore, the burden is on Petitioner to demonstrate both a deficient performance and resulting prejudice. *Fisher v. State,* 736 P.2d 1003, 1011–12 (Okl.Cr.1987), *cert. denied,* 486 U.S. 1061, 108 S.Ct. 2833, 100 L.Ed.2d 933 (1988) (citing *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2063–64, 80 L.Ed.2d 674 (1984)). Petitioner must demonstrate counsel's representation was unreasonable under prevailing professional norms, and the challenged action could not be considered sound trial strategy. *Fisher,* 736 P.2d at 1012 (citing *Strickland,* 466 U.S. at 688–89, 104 S.Ct. at 2064–65; *Kimmelman v. Morrison,* 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986)). To establish prejudice, Petitioner must show there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is one that undermines confidence in the outcome. *Id.* Although we consider the totality of the evidence which was before the fact-finder, the "ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Fisher,* 736 P.2d at 1012 (quoting *Strickland,* 466 U.S. at 694–95, 104 S.Ct. at 2068). We now turn to Petitioner's specific allegation.

■ Petitioner claims counsel was ineffective at trial because he did not present any evidence of Petitioner's mental disorders at trial. He claims the neuropsychological evaluation of Petitioner in 1995 shows he suffers from cognitive dysfunction associated with brain damage. The evaluation shows Petitioner had a below-normal intelligence quotient, and his cognitive handicaps allowed him to learn very slowly. His problem solving and reasoning abilities were "moderately impaired," and he exhibited characteristics "indicative of behavioral disinhibition or impulsivity." Despite these defects, the psychologist opined Petitioner was able to "appear 'normal' outwardly," although testing would have revealed "dysfunction in the form of deficits in reasoning, judgment, problem solving, insight, left side sensory motor abilities and slowed cognition" and would have shown Petitioner was "prone to making odd, poorly thought out decisions which reflect a lack of foresight and anticipation of the outcome of his actions." However, the psychologist also admitted in his affidavit Petitioner's mental status "certainly does not completely explain his current situation."

Based on this evidence, Petitioner's claim must fail. The psychologist admitted in his affidavit Petitioner would appear outwardly normal; therefore, there would be nothing indicating Petitioner exhibited any mental impairment. Accordingly, Petitioner has failed to demonstrate counsel's representation was unreasonable under prevailing professional norms: we know of no rule requiring an attorney to conduct a mental evaluation on a defendant who exhibits no signs of needing one, especially as the psychologist did not explain how Petitioner's impairment contributed to his actions in this case.

■ Furthermore, Petitioner has failed to show prejudice. That Petitioner may have been a slow learner does not mean he could not learn. Petitioner has failed to present evidence to this Court showing that by the time he reached adulthood, he had not learned killing was wrong. That he had a "lack of foresight and anticipation of the outcome of his actions" in no way detracts from the evidence at trial, which showed Petitioner was propositioned well in advance of a plan to kill the victim, and told several friends he was to receive money and a car for his efforts in helping or finding someone who would help kill the victim. After considering the affidavit and comparing it to the evidence adduced at trial, we find Petitioner has failed to present evidence that his counsel's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be

18, App. *Rules of the Court of Criminal Appeals,* Rule 9.7. Petitioner's case was filed under the post-conviction procedure which existed before the new law went into effect on November 1, 1995. In noting this change, we in no way express whether or not this portion of Petitioner's claim would be viable under the new post-conviction procedures.

relied on as having produced a just result." *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2064.

For these reasons, this proposition is without merit.

### IV.

■■■ For his second proposition of error, Petitioner claims his counsel on direct appeal was ineffective because she failed to present a "cumulative error" argument. The mere failure of direct appeal counsel to raise a claim does not, in and of itself, deprive a petitioner of "reasonably effective assistance" of counsel, *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, which would amount to constitutionally ineffective counsel on direct appeal. As one federal appeals court has phrased it, "[b]ecause law is not an exact science, an ordinary, reasonable lawyer may fail to recognize or to raise an issue, even when the issue is available, yet still provide constitutionally effective assistance." *Pelmer v. White,* 877 F.2d 1518, 1523 (11th Cir.1989).

Here, Petitioner has not shown that, even if his counsel's performance fell below that which we expect of counsel, he was prejudiced by that failure. Indeed, we conducted a plain-error review of the cumulative error argument in the petition for rehearing, and found it lacking. *Mayes,* 887 P.2d at 1325. Petitioner cannot show appellate counsel was ineffective. For this same reason, his third proposition, that the cumulative effect of errors in his trial warrant reversal, is without merit.

Accordingly, both Petitioner's second and third propositions are without merit.[3]

### V.

In his fourth proposition, Petitioner claims this Court improperly weighed evidence given by a prosecution witness concerning the schedule and time of events which took place the day of the murder. He claims that evi-

---

**3.** This writer has come to the regrettable conclusion the post-conviction act, as it existed at the time Petitioner filed his application, is unsatisfactory. A review of our cases reveals that rather than doing its job of narrowing the number of issues which should be presented, the post-conviction act allows for the preservation of issues which we have categorized as being technically waived but ultimately preserved under the rubric of ineffective assistance of appellate counsel. *Trice v. State,* 912 P.2d 349, 352 (Okl.Cr.1996). This approach allows this Court to "walk too far into this hall of mirrors," *Whitmill v. Armontrout,* 42 F.3d 1154, 1156 (8th Cir.1994), and is counterproductive, cumbersome, and unsatisfactory. This writer believes appellate jurisprudence was not created or designed to allow a person convicted of a crime to continually challenge a conviction with new assertions of error. I believe this Court has completely overlooked what should have been the first question to be asked: whether post-conviction counsel has shown cause for the procedural default which will allow review in post-conviction proceedings; and if so, whether any prejudice resulting from the excused failure to raise the issue at the first opportunity has been shown by clear and convincing evidence to work to a petitioner's actual and substantial disadvantage. I would have this Court recognize "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Murray v. Carrier,* 477 U.S. 478, 486–87, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986). Rather, the existence of cause "must ordinarily turn on whether the prisoner can

show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* at 488, 106 S.Ct. at 2645. Unless a petitioner could show some objective external factor prevented his attorney from raising issues on direct appeal, I would presume the omission on direct appeal was the result of "appellate counsel's studied decision not to raise the ... issues on direct appeal" and was within the "broad range of professional competence *Strickland* permits," *Whitmore v. Avery,* 26 F.3d 1426, 1429 (8th Cir. 1994), and a petitioner could not establish cause unless a petitioner could present a "substantial" reason to rebut this presumption. *See Rust v. Zent,* 17 F.3d 155, 160–61 (6th Cir.1994); *see also Roberts v. Singletary,* 29 F.3d 1474, 1478 (11th Cir.1994). A claim could still be heard if a petitioner could show the default was excused under a fundamental miscarriage of justice exception, which has been described as a "gateway" through which a petitioner must pass to have his otherwise barred claim considered on the merits. *Herrera v. Collins,* 506 U.S. 390, 404, 113 S.Ct. 853, 862, 122 L.Ed.2d 203, 219 (1993). To fall within this exception, a petitioner almost always would have to make "a proper showing of actual innocence," *Id.,* and would have to show by "clear and convincing evidence" that, but for the alleged error, "no reasonable juror would have found the petitioner guilty of the crime of which he was convicted." *Wallace v. Lockhart,* 12 F.3d 823, 827 (8th Cir.1994). This approach would be used to address allegations of both ineffective appellate and trial counsel. However, this position does not reflect the majority view of this Court.

dence was contradicted by other, more reliable testimony.

■■ This Court reviewed this and other testimony in resolving a claim the evidence was insufficient to convict Petitioner. *Mayes,* 887 P.2d at 1301–06. Accordingly, this proposition will not be reviewed, as it is *res judicata.*

## VI.

■■ For his fifth proposition of error, Petitioner claims the death penalty statutes of this state are unconstitutional. Specifically, he claims Art. 7, § 15 of the Oklahoma constitution prohibiting special verdicts is violated when the jury is required to designate in writing the statutory aggravating circumstances. This complaint is waived, as it could have been presented on direct appeal.

At the end of his argument on this proposition, Petitioner adds one sentence in the last paragraph that direct appeal counsel was incompetent for failing to raise this on direct appeal. Petitioner presents no argument or authority in support of this claim. As this claim is not adequately developed, we shall not consider it. *See Rules of the Court of Criminal Appeals,* Rule 3.5(C), 900–904 Okl. Decs. (West) at LXXII (to be codified at 22 O.S.Supp.1996, ch. 18 app.)

## VII.

Petitioner in his sixth proposition of error claims the trial court erred in not properly responding to the jury's question concerning whether the life without parole option really meant Petitioner would never be released from prison. Petitioner admits we addressed this claim on direct appeal, *Mayes,* 887 P.2d at 1316–18, but contends new authority from the Supreme Court impacts on our holding.

We disagree. In *Simmons v. South Carolina,* 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), the Court addressed a situation where a statute specifically prohibited parole under any circumstances when certain conditions were met. The specific punishment for first degree murder was either life or death; the life-without-parole provision arose from a separate statute which was applicable in that defendant's case. As

we noted in *Mayes,* 887 P.2d at 1318, there always exists the possibility in Oklahoma a governor could commute a sentence to one where a possibility of parole exists. Therefore, the law addressed in *Simmons* does not accurately reflect the state of the law in Oklahoma. *Simmons* is therefore not intervening law, and this issue is *res judicata.* We shall not address it again.

## VIII.

■■ In his seventh and last proposition of error, Petitioner contends the district court erred in failing to hold an evidentiary hearing. Evidentiary hearings at the post-conviction relief level must be held only when there exists "a material issue of fact." 22 O.S.1991, § 1083(b). However, the district court can receive proof by affidavits, depositions, oral testimony or other evidence, which it did. 22 O.S.1991, § 1084. Here, we find nothing "which required proof not contained in those records" before the district court. *Johnson v. State,* 823 P.2d 370, 373–74 (Okl. Cr.1991), *cert. denied,* 504 U.S. 926, 112 S.Ct. 1984, 118 L.Ed.2d 582 (1992). And since an evidentiary hearing is not otherwise required, *Id.* at 373, the district court did not err in deciding the claims without an evidentiary hearing. *See also Moore v. State,* 889 P.2d 1253, 1258 (Okl.Cr.), *cert. denied,* ——— U.S. ———, 116 S.Ct. 215, 133 L.Ed.2d 146 (1995); *Fox,* 880 P.2d at 385.

Accordingly, the order of the district court denying post-conviction relief is AFFIRMED.

An Appeal from the District Court of Jefferson County; the Honorable George W. Lindley, District Judge.

William Raymond Mayes, Petitioner, appeals to this Court from the denial of post-conviction relief by the District Court of Jefferson County, Case No. CRF–89–77. Petitioner was convicted by jury of First Degree Murder and was sentenced to death. He was also convicted of Conspiracy to Commit Murder, and was sentenced to ten (10) years and a $5,000 fine. This Court affirmed the convictions on direct appeal, and certiorari was denied by the Supreme Court of the United States. *Mayes v. State,* 887 P.2d

1288 (Okl.Cr.1994), *cert. denied,* ——— U.S. ———, 115 S.Ct. 1260, 131 L.Ed.2d 140 (1995). Denial of post-conviction relief is **AF-FIRMED**.

JOHNSON, P.J., and LANE, J., concur.

CHAPEL, V.P.J., specially concurs.

STRUBHAR, J., concurs in result.

CHAPEL, Vice Presiding Judge, specially concurring.

I agree that Mayes's application for post-conviction relief should be denied. I must briefly respond to dicta in footnote 3 which suggests that the post-conviction statutes current at the time Mayes filed his application allow for the preservation of issues technically waived, and then states that this statutory approach allows this Court to "walk too far into this hall of mirrors." This Court's jurisprudence has in no way expanded or extended petitioners' ability to bring claims on capital post-conviction review. As the footnote acknowledges, any generosity in reviewing claims is found in the statute itself, which this Court is bound to apply. Just as the previous statute allowed some issues otherwise waived to be preserved for review, the current statute also specifically preserves certain ineffective assistance of counsel claims for post-conviction review. This Court has not expanded the issues available on post-conviction, but we cannot narrow those issues beyond the Legislature's mandates.